In re LEVITZ ELECTRIC, INC., Debtor.

LEVITZ ELECTRIC, INC., Plaintiff,

v.

The GEORGE HYMAN CONSTRUCTION CO., and Centrust Savings Bank, Defendants,

v.

OCCIDENTAL FIRE & CASUALTY CO., OF NORTH CAROLINA, International Fidelity Insurance Co., and New York State Insurance Department, Third Party Defendants.

Bankruptcy No. 86–04079–BKC–SMW. Adv. No. 87–0043–BKC–SMW–A.

United States Bankruptcy Court, S.D. Florida.

May 22, 1989.

---

Louis Phillips, Steven Rubertone, Miami, Fla., for debtor.

Larry B. Hollander, New York City, Dan B. Guernsey, Miami, Fla., for Sureties.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE came before the Court on March 2, 1989 upon the Third Party Defendants', Occidental Fire & Casualty Company and International Fidelity Insurance Company ("Sureties") Motion To Further Determine Their Subrogation Rights and the Court having examined the evidence presented, considered the arguments of counsel, and being otherwise fully advised in the premises does hereby make the following Findings of Fact and Conclusions of Law:

Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 157(a), (b) and § 1334(b) and the district court's general order of reference. This is a core proceeding in which the Court is authorized to hear and determine all matters relating to this case in accordance with 28 U.S.C. § 157(b)(2)(B).

In March, 1984, the debtor, as subcontractor, entered into an executory contract with the George Hyman Construction Company ("Hyman") to perform electrical work on the Centrust Tower. As part of its obligations under the subcontract, the debtor had to secure both payment and performance bonds for its work. After filing for bankruptcy in December, 1986, the debtor rejected the executory contract with Hyman and began an adversary action against Centrust Bank and Hyman Construction ("defendants") to recover monies due for the work completed on the project. In response, the defendants filed a third party complaint against the sureties as codebtors on the payment bond covering the debtor's obligations.

In April, 1987, the sureties paid a $210,-000.00 claim of an unsecured creditor on behalf of the debtor who had supplied materials to the project and had filed a claim against the payment bond. Accordingly, the sureties drew on a letter of credit the debtor had assigned in their favor for $200,000.00, however, a $10,000.00 deficit remained. Thereafter, a settlement agreement was signed and approved by this Court in August of 1987 resolving the adversary action. All of the parties to the settlement agreed that Hyman would pay the debtor $154,409.00 for work completed on the project and Centrust Bank would pay the debtor $27,219.00 which represented the sums due under an oral contract and to which the sureties had no right of subrogation. The Court, however, reserved jurisdiction in order to consider the sureties Motion to Determine their Subrogation Rights wherein they requested priority to all of the money the debtor's estate would

be receiving from the defendants under the settlement agreement.

In response to the sureties motion the Court entered Findings of Fact and Conclusions of Law in November, 1987, reaffirming the settlement agreement previously approved by the Court and awarding the sureties, under the *Pearlman Doctrine*, $10,000.00 to cover the unreimbursed sum of the payment made to an unsecured creditor on behalf of the debtor. *Pearlman v. Reliance Insurance Co.*, 371 U.S. 132, 134, 83 S.Ct. 232, 233, 9 L.Ed.2d 190 (1962). The Court, however, denied the sureties claim to the entire amount as reimbursement for anticipated claims. Notwithstanding the Court's ruling, the sureties filed a Motion To Amend Findings of Fact arguing, once again, that under the *Pearlman Doctrine* they were entitled to the entire amount awarded to the debtor under the settlement agreement as reimbursement for anticipated claims filed against the debtor. The Court denied the Motion To Amend Findings of Fact and the sureties appealed, but failed to file the appropriate briefs and the appeal was dismissed.

█ In the interim, the sureties paid a second claim on behalf of the debtor for $269,737.00 and, therefore, have filed a second Motion To Further Determine Their Subrogation Rights requesting that the sum of $144,409.00 previously awarded to the debtor under the settlement agreement be paid over to the sureties as reimbursement for their payment. Under 11 U.S.C. § 509(a), a codebtor, surety, or guarantor that has paid a claim on behalf of the debtor is subrogated to the rights of the creditor to the extent of the payment made. Subrogation is an equitable doctrine which enables a surety who has paid the debt of another to assert the rights of the person he paid. *Pearlman v. Reliance Insurance Co.*, 371 U.S. at 134, 83 S.Ct. at 233. Once payment is made by the surety to the principal's creditor, "there is an equitable assignment to the surety of all the rights which the creditor could assert against the principal." *In re Pangori & Sons, Inc.*, 53 B.R. 711, 716 (Bankr.E.D.Mich.1985). The surety, however, cannot assert any greater

rights than the creditor in whose shoes he stands. *Fisher v. The Outlet Company (In re Denby Stores, Inc.)*, 86 B.R. 768, 781 (Bankr.S.D.N.Y.1988); *See also Guinee v. Board of Supervisors of Fairfax County (In re James R. Corbitt)*, 62 B.R. 1017, 1022 (Bankr.E.D.Va.1986).

█ In their second Motion To Further Determine Subrogation Rights the sureties are seeking to reargue their Motion To Amend Findings of Fact and claim that they are entitled to the entire amount paid over to the estate under the settlement agreement by virtue of their payment of a second claim in the amount of $269,737.00. The Court finds that the sureties have a right of subrogation, but they are not entitled to priority payment as to the $144,409.00 paid to the debtor under the settlement agreement. The right of subrogation only entitles the sureties to stand in the shoes of that particular creditor, but it does not entitle the sureties to priority payment out of a specific source which represents settlement funds paid to the estate and which will be disbursed in accordance with a confirmed plan. It would be inconsistent with the purpose of the bankruptcy act to allow a surety to obtain a higher priority position than the creditors it paid would have enjoyed. *See, e.g., In re Pangori*, 53 B.R. 711, 716 (Bankr.E.D.Mich.1985). The sureties have not presented any evidence to support a finding by this Court that they are entitled to priority over the $144,409.00 received by the estate in April, 1987. Therefore, the sureties can only succeed to the position and rights of the unsecured creditor they have paid and are only entitled to receive whatever amount will be appropriate under the confirmed plan.

Based upon the foregoing facts, the sureties Motion to Further Determine its Subrogation Rights is denied. The Court finds that the sureties are not entitled to receive reimbursement from the money paid to the estate under the settlement agreement, but shall stand in the shoes of the unsecured creditor it paid postpetition and receive payment in accordance with the confirmed plan.

A separate Final Judgment of even date has been entered in conformity herewith.