**In re PADULA CONSTRUCTION COMPANY, INC., Debtor.**

**NATIONAL FIRE AND INSURANCE COMPANY OF HARTFORD, et al., Plaintiffs,**

**v.**

**PADULA CONSTRUCTION COMPANY, INC., et al., Defendants.**

Bankruptcy No. 88–00337–BKC–AJC. Adv. No. 88–0419–BKC–AJC–A.

United States Bankruptcy Court, S.D. Florida.

July 31, 1990.

Ronald G. Neiwirth, Miami, Fla., for CNA.

## AMENDED ORDER RE: DIP'S MOTION FOR JUDGEMENT ON THE PLEADINGS

A. JAY CRISTOL, Bankruptcy Judge.

THIS MATTER came before the court on the 18th day of December, 1989, on the motion of the Debtor–In–Possession (DIP) for judgment on the pleadings against CNA, its sureties. On May 24, 1990 the court entered an order denying judgment on the pleadings, docketed at CP 136. On June 5, 1990 the DIP filed a *Motion to Amend Orders or Motion for Rehearing on Order on DIP's Motion for Summary Judgment, and Order on DIP's Motion for Judgment on the Pleadings.* The court notes the DIP's allegation that the order was not received until May 31, 1990, and accepts the DIP's motions as timely filed.

█ The gravamen of the DIP's motion for amendment or rehearing is that the court ignored the legal issues presented by the DIP's motion for judgment on the pleadings, and that the court made findings that were not supported by the material before the court.

The only legal issue before the court on the defendant's motion for judgment on the pleadings is whether the plaintiff has pled facts which will entitle recovery under any theory. DIP makes much of the allegation

that plaintiff CNA did not mention equitable subrogation in its pleadings. Many years before this court was founded, the federal courts went to a system of fact pleading. No longer is a plaintiff required to name his theory of recovery in the initial pleading or find himself barred. The court finds that even if equitable subrogation is not mentioned by name in CNA's complaints, the facts pled fairly raise the issue.

DIP's second allegation is of more substance. The court will vacate the order docketed at CP 136 and enter this order in its stead.

Essentially, the DIP is claiming that, because it rejected their indemnity agreements, CNA is no longer in prime position to be reimbursed out of job proceeds from construction projects upon which the Debtor defaulted pre-petition. The DIP is thus asking this court to reject the concept of equitable subrogation of sureties who must perform a debtor's obligations after a pre-petition default on a construction contract.

This case is a consolidation of two adversary proceedings. In this case, CNA sued Padula. In the consolidated case, adversary case number 88–0212–BKC–AJC, Padula sued CNA. Although not strictly accurate, it is convenient for the purposes of this order to consider the pleadings of 88–0212 as a counter-claim and answer to a counter-claim in this case. In its amended counter-claim, the DIP acknowledged CNA to be its surety for three public construction projects owned by the School Board of Palm Beach County (School Board), and simply asked this court to determine the validity, extent and priority of CNA's claim. In CNA's answer to the first amended counter-claim, CNA asserted its rights of subrogation.

Meanwhile, in this adversary proceeding, CNA named both the DIP and the School Board (as owner) as defendants. In its original complaint, CNA had claimed that one project (Portables) had been completed, while two more School Board projects (Jefferson Davis and Howell Watkins) were not. It also alleged that the School Board was withholding funds that should be turned over; CNA asserted that it had a right to those funds, as against the School Board and the DIP, by virtue of its having made payments on behalf of the Debtor to complete its obligations.

By the time of its amended complaint, CNA claimed that all three projects were completed. CNA asserted that as a surety, it had undertaken to perform the Debtor's obligation including, *inter alia,* payment of subcontractors and materialmen.

The DIP responded with an affirmative defense that CNA had paid various of its obligations on the jobs without proper verification as to validity and amount.

The School Board answered and cross-claimed collectively to the DIP and to CNA, stating that the jobs had not been completed, and that there were setoffs and counterclaims, and the sums sought were not due.

Finally, several other potential creditors responded to the DIP's complaint with various allegations of amounts due to them from the job proceeds.

Subsequently, the DIP moved in the main case to reject CNA's indemnity agreements as executory contracts. CNA objected, but an order was entered granting rejection under 11 U.S.C. § 365. The DIP's most recently-filed response sets forth six affirmative defenses; four of them relate to the property of settlement payments made by CNA upon claims pertaining to the three projects; one asserts that CNA has no right to the funds in the hands of the School Board, since all the payments it had made were post-petition; the last asserts that CNA has no right of subrogation, since its indemnity agreements, which provided for contractual subrogation, had been rejected.

Although the DIP's complaint sounds in terms of settling claims issue—determining the validity, priority and extent of claims— the heart of the matter is a determination of property rights. Are the contract proceeds retained by the School Board property of the DIP, or of CNA? Resolution of property rights must necessarily turn on state law. *In re: Livingston,* 804 F.2d 1219 (11th Cir.1986); *In re: International*

*Gold Bullion Exchange,* 53 B.R. 660 (Bankr.S.D.Fla.1985). Normally, a motion for judgement on the pleadings by a plaintiff raises a question of whether the defendant has pleaded a legal or equitable defense at all. When a defendant moves for judgement on the pleadings, the inquiry is whether the plaintiff has stated a cause of action. A defendant's own allegation in answer to the complaint cannot be used to support his motion. Here, due to the consolidation of the two adversary proceedings, the DIP is both a defendant, and in effect, a counter-plaintiff. Thus, judgement on the pleadings is not appropriate so long as the pleadings raise justiciable issues. Those issues must be measured against the applicable state law regarding contractors, their sureties, and subrogation; not merely against federal law regarding validity of claims.

█ The court concludes that the pleadings clearly raise justiciable issues of law and fact. Collectively read, the pleadings show the classic three way dispute among an owner, a surety, and a contractor. The School Board and CNA allege that the DIP breached its contracts prepetition and that CNA was required to step in and fulfill the Debtor's obligations; CNA's complaint alleges subrogation, as does its answer to the DIP's amended complaint. CNA initially alleged that two of the jobs were incomplete; in a subsequent amendment, it alleged that they had been completed. The DIP did not finish them. On the other hand, the School Board alleged that the projects were not finished, or in the alternative that while they may have been completed, that the School Board had suffered damages by reason of the DIP's alleged default.

A factual matter to be determined is whether the DIP has defaulted under its contracts, causing CNA to step in to fulfill the Debtor's obligations under its payment and performance bonds. If the default is valid and CNA did fulfill the duties as surety, then we must look to the controlling state law in order to determine who is entitled to the School Board proceeds.

In *Transamerica Insurance Company v. Barnett Bank of Marion County,* 540 So.2d 113 (Fla.1989), the Florida Supreme Court reviewed the case in order to resolve a conflict with prior cases. In *Transamerica,* the bank, which held a perfected security interest against receivables of a contractor, won a partial summary judgement as to priority in certain contract proceeds, as against the surety. The Fifth District Court of Appeals affirmed. (524 So.2d 439 (Fla.App.1988); rev'd 540 So.2d 113 (Fla.1989)). The Florida Supreme Court quashed and remanded, holding that:

> The initial question is whether a surety's equity subrogation rights are limited to rights it obtains by standing in the shoes of the defaulting contractor. On this point we agreed with the court in *National Shawmut Bank v. New Amsterdam Casualty Co.,* 411 F.2d 843, 844–45 (1st Cir.1969):
>
>> [T]here is confusion because the tendency is to think of the Surety on *Miller Act* payment and performance bonds as standing in the shoes only of the entity it "insures"—the contractor. So long as this one-dimensional concept prevails, logic compels the Surety to be assessed as merely one of the contractor's creditors, and to be subject to the system of priorities rationalized by the Uniform Commercial Code. But the Surety in cases like this undertakes duties which entitle it to step into three sets of shoes. When, on default of the contractor, it pays all the bills of the job to date and completes the job, it stands in the shoes of the contractor insofar as there are receivables due it; in the shoes of laborers and material men who have been paid by the Surety who may have had liens; and not least, in the shoes of the government, for whom the job was completed. *Transamerica,* at 116.

In short, CNA (as the surety) is subrogated as a matter of law not only to the rights of the subcontractors and materialmen whom it has paid, but also to the rights of the DIP (the contractor), and even to those of the School Board (the owner). This is true whether CNA is entitled to contractual subrogation or not.

█ Federal cases are in accord with state law. They uniformly demonstrate

that when a surety pays claims or completes a job or both, its rights to the contract proceeds are superior to the owner's right of offset, even where the owner may have independent claims against the contractor arising from other circumstances; e.g., the United States, as owner may not offset an independent claim for unpaid taxes from job proceeds. See *Aetna Casualty and Surety Co. v. United States,* 435 F.2d 1082 (5th Cir.1970); *Trinity Universal Insurance Co. v. United States,* 382 F.2d 317 (5th Cir.1967).

The DIP's reliance on *In re: Levitz Electric, Inc.,* 100 B.R. 602 (Bankr.S.D.Fla. 1989) in support of its position is misplaced. First, at the time of the hearing in *Levitz,* the Florida Supreme Court's decision in *Transamerica* was not published. Second, *Levitz's* procedural posture was different from the case at bar. Third, *Levitz* involved earned contract sums which had already been sued for and collected by the DIP, and the surety's efforts to procure the return of those funds. Here, the parties are battling over funds still held by the owner as retainage. Such sums are not due and payable until the job is complete, and all subcontractors and materialmen paid. (*See* 540 So.2d 113, 115). Finally, *Levitz* did not deal with a debtor who had been in default prior to its bankruptcy filing; in *Levitz,* the debtor filed for protection first and then rejected its construction contract. Here, in contrast, the Debtor is alleged to have been in default on all three projects pre-petition. While one of the projects was completed (Portables), the Debtor failed to pay its subcontractors and materialmen. The other two school projects were not completed, and the allegation was that the Debtor had defaulted not only in its failure to pay, but in its failure to finish the jobs. CNA provided the wherewithal to finish, thus enabling payment of the retainage. *Levitz* stands for the proposition that the surety is not entitled to a higher priority than the creditor that he paid. (100 B.R. 602, 604). It does not appear to the court that that result is inconsistent with the relief sought here.

In short, if the DIP is in default pre-petition as alleged, then CNA is an equitable subrogee, notwithstanding the DIP's rejection of its indemnity agreement. The pleadings accurately reflect a dispute over completion of the projects, the amounts due thereon, and that of CNA's claim to be a subrogee, either contractual or otherwise. Florida law clearly provides that a surety is entitled to equitable subrogation not only to the position of subcontractors and materialmen, but also to the positions of the DIP and the School Board. Accordingly, the DIP cannot relegate CNA, its surety, to the status of a mere unsecured creditor.

The court being otherwise fully advised in the premises, it is:

ORDERED and ADJUDGED:

that the *ORDER RE: DIP'S MOTION FOR JUDGMENT ON THE PLEADINGS* dated the 24 day of May, 1990 is hereby VACATED.

IT IS FURTHER ORDERED:

that the motion of the DIP for judgement on the pleadings be, and the same is hereby, DENIED.

DONE and ORDERED.