PHIFER STATE BANK, a corporation, *Appellant,* v. DETROIT FIDELITY & SURETY COMPANY, et al., *Appellees.*

En Banc.

Opinion filed April 13, 1929.

*J. C. Adkins, C. R. Layton* and *H. L. Gray* for Appellant;

*Hampton & Hampton* for Appellees.

BUFORD, J.—In this case one Ladd doing business as Ladd Construction Company, entered into a contract with the City of Gainesville on August 7th, 1925, for the furnishing of material and performance of labor necessary for municipal improvements. Ladd furnished bond guaranteeing the performance of the contract, which bond was executed by appellee as surety. After entering into the contract with the City and furnishing the bond Ladd, in October, 1925, obtained a loan from Phifer State Bank, giving to the bank his note and also giving the bank an order addressed to the City of Gainesville requesting the City to pay the bank on demand the sum of $10,000.00. The order was in the following language:

Gainesville, Fla., Oct. 8th, 1925.
To the City of Gainesville, Florida:
Please pay to the Phifer State Bank on demand the sum of $10,000 Ten Thousand Dollars and charge to my account.

LADD CONSTRUCTION COMPANY,
By Elwood G. Ladd, Owner.

The City did not accept the order in the sense that it bound itself to pay the same but it did receive the order and thereafter paid the bank the sum of $6,000.00, after the payment of which Ladd died and default was made in the completion of the contract. The surety company was notified of the default and assumed to complete the contract as fulfillment of its surety.

At the time that the default occurred the City held an unpaid balance earned by Ladd of more than $4,000.00.

Before the bond was made there was application for the bond by Ladd Construction Company and an agreement of indemnity made between Ladd Construction Company and the surety company, which agreement contained the following provisions, to-wit:

And for the better protection of the said Company, the undersigned, as of the date hereof, hereby assigns, transfers and conveys to it, the said DETROIT FIDELITY AND SURETY COMPANY all right, title and interest of the undersigned in and to all the tools, plant, equipment and materials of every nature and description that may now or hereafter be upon said work, or in, on or about the site thereof, including as well all materials purchased for or chargeable to said contract which may now be in process of construction, or storage elsewhere, or in transportation to said site, hereby assigning and conveying also all rights of the under-

signed in and to all sub-contracts, which have been or may hereafter be entered into, and the materials embraced therein, and authorizing and empowering said Company, its authorized agents or attorneys, to enter upon and take possession of said tools, plant, equipment, materials and sub-contracts, and enforce, use and enjoy such possession upon the following conditions, viz: The assignment shall be in full force and effect, as of the date hereof, should the undersigned fail, refuse or be unable to complete the said work in accordance with the terms of the contract covered by said bond, or in event of any default on the part of the undersigned under the said contract.

In further consideration of the execution of the said bond, the undersigned does hereby agree, as of this date, that the said DETROIT FIDELITY AND SURETY COMPANY shall as surety on said bond, be subrogated to all rights, privileges and properties of the undersigned as principal and otherwise in said contracts, and does hereby assign, transfer and convey to said company all the deferred payments, and retained percentages, and any and all moneys and properties that may be due and payable at the time of such breach of default, or that may thereafter become due and payable to said undersigned on account of said contract, or on account of extra work or materials supplied in connection therewith, hereby agreeing that all such moneys and the proceeds of such payments and properties, shall be the sole property of the said DETROIT FIDELITY AND SURETY COMPANY and to be by it credited upon any loan, cost, damage, charge and expense sustained, or incurred by it as above under its bond of suretyship.

The Surety Company completed the contract and the City paid the entire balance due and earned under the

contract to the surety company less $4,000.00 and filed a bill of interpleader in the Circuit Court of Alachua County setting up the fact that this fund was claimed both by the bank and by the surety company and prayed an order from the Court to determine to whom the money should be paid and to disburse the same, the bank paying the money into the registry of the Court. There was no objection raised to the interpleader. The bank and the surety company each appeared and by their respective answers asserted their respective claims. The decree was in favor of the surety company and the bank appealed. The law in the case is well settled in this country, though it appears that the exact question here presented has never been directly determined by this Court.

What appear to be the leading cases are those reported in 164 U. S. 227, 41 L. Ed. 412, of Prairie State National Bank of Chicago v. U. S., and U. S. v. Hitchcock, in which it is said:

> A surety who completes a contract with the United States on the contractor's default is subrogated to the rights which the United States might assert against a fund created by the retention of ten percent of the sums estimated from time to time as the value of the work done, in order to insure its completion; and this right relates back to the making of the contract, and is superior to any equitable lien asserted by a bank for moneys advanced to the contractor without the surety's knowledge before he began to complete the work.

In considering a case like the one at bar where the same questions were presented the Supreme Court of Michigan in the case of the City of Detroit v. Fidelity & Deposit Co. of Maryland, 215 N. W. 394, say:

It seems plain that the assignment becomes effective under the agreement provided for in the application upon the breach of either the contract or bonds for which the application was made, and when the Hidey Company defaulted in paying outstanding claims for labor and materials, the contract and bond were both breached, as between the contractor and its surety, and the assignment became effective as of date of the bond, which was long prior to the assignment made by the contractor to the bank.

But irrespective of the assignment of the Fidelity Company provided in the contractor's application, we are convinced it is entitled to the fund in controversy under the theory of subrogation as applied by this court in Board of County Road Commissioners v. Southern Surety Co., 216 Mich. 528, 185 N. W. R. 755. Only the question of subrogation was considered in that case and found controlling. The court there sustained the rights of the surety as against a bank to which the contractor had subsequently assigned all moneys due or to become due on his contract to secure funds as was claimed with which to carry on the contract. Among other things, the court quoted from Henningsen v. U. S. Fidelity & Guaranty Co., 208 U. S. 404, 28 Sup. Ct. R. 389, 52 L. Ed. 547, the following which is well in point here:

"Whatever equity, if any, the bank had to the fund in question, arose solely by reason of the loans it made to Henningsen, Henningsen's surety was, upon elementary principles, entitled to assert the equitable doctrine of subrogation; but it is equally clear that the bank was not, for it was a mere volunteer, and under no legal obligation to loan its money."

The Supreme Court of Ohio in State ex rel. Southern

Surety Co. v. Schlesinger, Director of Highways and Public Works, 151 N. E. R. 177, say:

A surety on the bond of a contractor for public work, who completes the work after abandonment by the contractor, is subrogated to all the rights of the state in the fund remaining at the time of declaration of forfeiture, and entitled to priority of payment of the balance of said fund as against the assignee of such contractor, to whom the balance of said fund had been assigned to secure loans received by him, the proceeds of which were used in making payment of the claims of laborers and materialmen, even though the surety on such bond was obligated to pay all claims of laborers and materialmen, and even though such money was loaned and such claims paid before declaration of forfeiture.

Again, the Supreme Court of Michigan, in Fidelity and ard, 82 N. E. R. 688, 14 L. R. A. (N. S.) 457, say:

The equities of the surety on a sewer contractor's bond, as matter of contract and law, attached on the date of the bond, where the contractor in his application for the bond agreed that the surety should be subrogated to all the rights and property of the applicant arising out of said contract, and, therefore, its rights are superior to the rights of a bank under a subsequent assignment from the contractor to repay a loan made to him.

The Supreme Court of Massachusetts in Labbe v. Bernard, 82 N. E. R. 688, 14 L. R. A. (N. S.) 457, say:

While it is true that the rights of the sureties to the remedies of the principal do not become complete, and

are incapable of present enforcement, until they shall have discharged their principal's obligation, yet their right became an inchoate one as soon as they had entered into relation of suretyship; and their equitable assignment of their principal's rights and remedies, when completed by their performance of his obligation, relates back, as against each other and their principal, to that earlier time. Rice v. Southgate, 13 Gray 142; Lewis v. Fabor, 65 Ala. 460; Wood v. Lake, 62 Ala. 489; Conner v. Howe, 35 Minn. 518, 29 N. W. R. 314; McArthur v. Martin, 23 Minn. 74; Forbes v. Jackson, L. R. 19 Ch. Div. 615.

The decree of the chancellor is without error and should be affirmed. It is so ordered.

Affirmed.

TERRELL, C. J., AND WHITFIELD, ELLIS AND BROWN, J. J., concur.