540 So.2d 113 (1989)
TRANSAMERICA INSURANCE COMPANY, Petitioner,
v.
BARNETT BANK OF MARION COUNTY, N.A., Respondent.
No. 72531.
Supreme Court of Florida.
March 16, 1989.
*114 Robert E. Morris of Morris & Rosen, P.A., Tampa, for petitioner.
Tim D. Haines and Young J. Simmons of Green and Simmons, P.A., Ocala, for respondent.
Frederick B. Karl, Thomas J. Maida and Patricia Hart Malono of Karl, McConnaughhay, Roland & Maida, P.A., Tallahassee, amicus curiae for American Ins. Ass'n.
David T. Knight and Jeanne T. Tate of Shackleford, Farrior, Stallings & Evans, P.A., Tampa, amicus curiae for Reliance Ins. Co., United Pacific Ins. Co. and Planet Ins. Co.
J. Thomas Cardwell of Akerman, Senterfitt & Eidson, Orlando, amicus curiae for Florida Bankers Ass'n.
SHAW, Justice.
We review Transamerica Insurance Co. v. Barnett Bank, 524 So.2d 439 (Fla. 5th DCA 1988), to resolve conflict with Union Indemnity v. City of New Smyrna, 100 Fla. 980, 130 So. 453 (1930); Florida East Coast R.R. v. Eno, 99 Fla. 887, 128 So. 622 (1930); and Phifer State Bank v. Detroit Fidelity & Surety Co., 97 Fla. 538, 121 So. 571 (1929). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
Petitioner surety and Turner Construction, Inc., entered into an agreement whereby petitioner would provide surety bonds for construction projects which Turner contracted to perform for various government bodies. As required by section 255.05, Florida Statutes (1983),[1] Turner obtained payment and performance bonds for the benefit of each government body and for subcontractors and other persons supplying labor, material, and services in the construction projects. An indemnity agreement assigned accounts receivable to petitioner should Turner default. By its terms, the indemnity agreement constituted a security agreement without abrogating, restricting, or limiting the rights of petitioner under the agreement, under law, or in equity. Turner obtained a series of loans from respondent bank to finance its operations, in return for which Turner gave the bank a security interest in accounts receivable from the construction contracts. *115 The bank's security interest was filed under the Uniform Commercial Code (U.C.C.) prior to the filing of petitioner's security interest.
Construction contracts customarily provide for progress payments to be made to contractors by the owner as construction proceeds. Two safeguards have been devised to protect owners against default by the contractor, both of which are involved here. The first is a contractual provision under which the owner retains a percentage of the progress payments for the purpose of curing or mitigating subsequent contractor default. The retainage is paid to the contractor upon satisfactory performance and/or payment, but neither the contractor nor its assignees or creditors have any claim on the funds until the contractor performs. The second safeguard is a requirement that the contractor obtain payment and performance surety bonds. Because of their importance, payment and performance bonds are mandatory under section 255.05 for government projects and are commonly employed by prudent private owners.
This case comes to us from a partial summary judgment which was affirmed in the district court. The trial court ruled that the bank's prior perfection of its security interests in Turner's accounts receivable from the construction contracts gave it priority over the claims of the surety based on equitable subrogation. The trial court order noted that it did "not operate as a determination that Turner was in fact owed any monies as a result of accounts receivable or funds earned but unpaid." Consistent with this disclaimer, it also appears that the trial court treated petitioner's equitable subrogation rights as if these rights arose solely from standing in the shoes of the contractor Turner[2] and not from standing in the shoes of the owner/obligee and laborers and materialmen involved in the construction projects. The district court adopted a similar analytical approach in its affirmance by rejecting what it called the "federal view" that sureties had priority by virtue of equitable subrogation arising from owner/obligees, laborers, and materialmen. Accordingly, the district court held: (1) the surety's assignment was a security interest subject to the filing and perfection requirements of the U.C.C.; (2) there is no good faith exception to U.C.C. filing requirements and it matters not whether the secured party who first perfects its interest knows of any other prior interests; and (3) the remedy of equitable subrogation is not available to a surety because of the filing requirements of the U.C.C.
The initial question is whether a surety's equitable subrogation rights are limited to rights it obtains by standing in the shoes of the defaulting contractor. On this point we agree with the court in National Shawmut Bank v. New Amsterdam Casualty Co., 411 F.2d 843, 844-45 (1st Cir.1969).
[T]here is confusion because the tendency is to think of the surety on Miller Act payment and performance bonds as standing in the shoes only of the entity it "insures"  the contractor. So long as this one-dimensional concept prevails, logic compels the surety to be assessed as merely one of the contractor's creditors, and to be subject to the system of priorities rationalized by the Uniform Commercial Code. But the surety in cases like this undertakes duties which entitle it to step into three sets of shoes. When, on default of the contractor, it pays all the bills of the job to date and completes the job, it stands in the shoes of the contractor insofar as there are receivables due it; in the shoes of laborers and material men who have been paid by the surety  who may have had liens; *116 and, not least, in the shoes of the government, for whom the job was completed.
The narrow view that a surety acts only for the contractor (principal) is inconsistent with the purpose of a surety bond: to protect the obligees. A surety who performs or pays on behalf of a obligee steps into the shoes of the obligee to the extent of performance or payment.
Traditionally sureties compelled to pay debts for their principal have been deemed entitled to reimbursement, even without a contractual promise such as the surety here had. And probably there are few doctrines better established than that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed.
Pearlman v. Reliance Ins. Co., 371 U.S. 132, 136-37, 83 S.Ct. 232, 235, 9 L.Ed.2d 190 (1962) (footnote omitted). These rights of the surety as subrogee are not inferior even to the rights of the obligee and may be asserted against the obligee. Trinity Universal Ins. Co. v. United States, 382 F.2d 317 (5th Cir.1967).
The district court held that the surety's assignment was a security interest under the U.C.C. We disagree for two reasons. First, the U.C.C. itself suggests that a surety's assignment from a contractor, should be excluded from the U.C.C. Section 679.104(6) excludes a transfer of a right to payment under a contract to an assignee who is also to do the performance under the contract. A surety's assignment is contingent on performance by the surety in the event the contractor defaults. This contingent assignment based on contractual performance contrasts sharply with the noncontingent assignment to a financier which does not call for performance and which is uncontrovertably a security interest. In this connection, we note that a draft provision of the U.C.C. which would have specifically subordinated a surety's assignment to a later perfected security interest was specifically rejected by the Editorial Board which drafted the U.C.C. See In re J.V. Gleason Co., 452 F.2d 1219, 1221 nn. 5-6 (8th Cir.1971), and National Shawmut Bank, 411 F.2d at 846 n. 4. Contrary to the district court below, we see this rejection as evidence that the drafters of U.C.C. did not intend to upset the wellestablished rules governing the priority of a surety assignment. Respondent is attempting to obtain through court-made law what it and others similarly situated were unable to obtain in the drafting and adoption of the U.C.C. Second, even if we were to assume that a surety's assignment was a security interest, it does not follow that this would abrogate petitioner surety's rights under the doctrine of equitable subrogation. A security interest and equitable subrogation are not incompatible, indeed the surety contract here contained a provision that the assignments therein of a security agreement did not abrogate the surety's right to protect itself under other theories. This contractual provision is consistent with section 671.103 which provides that general principles of law and equity are applicable unless displaced by particular provisions of the U.C.C. Equitable subrogation arises from law, not from the provisions of a contract. Accord In re J.V. Gleason Co.; National Shawmut Bank; United States Fidelity & Guar. Co. v. First State Bank, 208 Kan. 738, 494 P.2d 1149 (1972).
The district court acknowledged that statutes requiring filing or recording to give notice usually contain a "good faith" limitation. Nevertheless,
[a]lthough, admittedly, it is not conclusively clear, it appears to us from the drafting history of U.C.C. § 9-312(5) (§ 679.312(5), Fla. Stat.), that a "good faith" limitation was intentionally omitted from the U.C.C. provision and, therefore, none should be implied by the courts.
Transamerica, 524 So.2d at 445. Although the point is not critical here, we note that section 671.203 imposes an obligation of good faith on performance or enforcement of every contract or duty within the U.C.C.
On the overall question of subrogation, the district court concluded that equitable subrogation was not available to a *117 surety in Florida because sureties have ample opportunities to make contractual subrogation agreements with contractors, other contractor assignees, and with surety obligees and to file these assignments (security interests) under the U.C.C. As is obvious from our disposition of the other points above, we do not agree. Nonsurety assignees of a contractor in default have no enforceable claim on funds withheld by the owner/obligee because of contractor default. The interests of all concerned parties, whether they be contractors in default, nonsurety assignees, owners, or other obligees, are best served by prompt performance by the surety. Under these circumstances, it is appropriate to give priority to the claims of the surety, up to the limits of its performance. Section 671.102 provides that the code will be liberally construed and applied to promote its underlying purposes and policies, one of which is to make uniform the law among various jurisdictions. As Chief Judge Sharp pointed out in her dissent below,
the overwhelming and essentially unanimous post-U.C.C. decisions in this country, federal as well as state courts, have held that (1) the surety's equitable right of subrogation is not a consensual security interest, (2) no U.C.C. filing is necessary to perfect the surety's interest, and (3) the surety's interest continues to be, as it was under pre-Code law, superior to the claim of a contract assignee, such as a bank.
Transamerica, 524 So.2d at 449-50 (citing National Shawmutt Bank v. New Amsterdam Casualty Co., 411 F.2d 843 (1st Cir.1969); In re J.V. Gleason Co., 452 F.2d 1219 (8th Cir.1971); Home Indem. Co. v. United States, 193 Ct.Cl. 266, 433 F.2d 764 (1970); First Alabama Bank v. Hartford Accident & Indem. Co., 430 F. Supp. 907 (N.D.Ala. 1977); Third Nat'l Bank v. Highlands Ins. Co., 603 S.W.2d 730 (Tenn. 1980); Alaska State Bank v. General Ins. Co., 579 P.2d 1362 (Alaska 1978); Argonaut Ins. Co. v. C & S Bank, 140 Ga. App. 807, 232 S.E.2d 135 (1976); Financial Co. of America v. United States Fidelity & Guar. Co., 277 Md. 177, 353 A.2d 249 (1976); Canter v. Schlager, 358 Mass. 789, 267 N.E.2d 492 (1971); United States Fidelity & Guar. Co. v. First State Bank, 208 Kan. 738, 494 P.2d 1149 (1972); Travelers Indem. Co. v. Clark, 254 So.2d 741 (Miss. 1971); Jacobs v. Northeastern Corp., 416 Pa. 417, 206 A.2d 49 (1965); White & Summers, Uniform Commercial Code § 22-5 (2d ed. 1980)). Adopting the position of the district court would frustrate uniformity and create conflict in the application of U.C.C. This conflict of law would also exist in bankruptcy cases where equitable subrogation is recognized. Pearlman; In re J.V. Gleason Co.; McAtee v. United States Fidelity & Guar. Co., 401 F. Supp. 11 (N.D.Fla. 1975).
Petitioner also argues that its equitable subrogation rights to priority over the bank in individual contracts combine with common law setoff to give it priority over any excess construction funds from other contracts. We disagree for the reasons stated in Judge Sharp's dissent below. Priority based on equitable subrogation in one contract does not provide priority in excess funds from another contract. This does not mean, however, that an owner cannot prioritize its own common law right of setoff.
We quash the decision below and remand for further proceedings consistent with this decision.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, BARKETT and KOGAN, JJ., concur.
GRIMES, J., did not participate in this case.
NOTES
[1] All statutory references are to Florida Statutes (1983).
[2] The trial court order recites "the equitable principle involved is that when one [the surety], pursuant to obligation, not a volunteer, fulfills the duties of another [the contractor], he is entitled to assert the rights of that other against third persons." The order also recites: "Based upon its prior compliance with the Florida Uniform Commercial Code, BARNETT has a superior claim to all accounts receivable and contract rights of TURNER which were earned or vested, but unpaid, as of the moment of the default by TURNER under any job or contract." (Emphasis added.)