**In re EASTERN MARINE, INC., Debtor.**

**Bankruptcy No. 87–02010.**

United States Bankruptcy Court,
N.D. Florida,
Panama City Division.

Aug. 9, 1989.

William M. Barley, Tallahassee, Fla., for IINA.

William M. Atkinson, Panama City, Fla., for debtor.

MEMORANDUM OPINION ON OBJECTIONS TO JOINT STIPULATION OF SETTLEMENT AND DEBTOR'S DISCHARGE

LEWIS M. KILLIAN, Jr.,
Bankruptcy Judge.

THIS MATTER came on to be heard upon Indemnity Insurance Company of

North America's ("IINA") motion objecting to a joint stipulation and order approving settlement, payment of settlement amounts and for discharge [1] of the debtor, Eastern Marine, Inc. ("EMI").

The underlying facts relevant to the resolution of this case revolve around two contracts with the United States Navy and may be summarized as follows:

### Lighter Vessel Contract

The first contract ("lighter vessel contract") is between the debtor, EMI, and the United States Navy for the construction of covered lighter vessels. In 1985, IINA provided two bonds guaranteeing EMI's performance and payment for all labor and materials furnished by others for work required to complete said vessels. In connection with these bonds, EMI executed an agreement of indemnity. This agreement contained a "dragnet" clause which purportedly assigned to IINA an ownership interest in all of EMI's contracts whether or not bonded by IINA to secure IINA's undertaking. No UCC financing statement was ever recorded by IINA with respect to this assignment.

According to IINA, in early 1986, EMI defaulted on its obligations to timely pay amounts due others for materials involved in the construction of the lighter vessels. As a result, IINA, as surety, began discharging EMI's obligations under the labor and materials bond and incurred other costs and expenses incidental to the discharges.

In June 1987, IINA was sued in two separate actions under the labor and materials bond. The suit by Industrial Welding Supply Company, Inc., sought approximately $100,000.00 but was settled in August 1988, for $15,000.00. The suit by Jeffreys Steel Company, Inc. (Jeffreys), is seeking approximately $500,000.00 to compensate for steel allegedly furnished to EMI for use in the construction of the covered lighter vessels. IINA has counterclaimed against Jeffreys for allegedly failing to perform as agreed and furnishing non-conforming steel to EMI. This case remains pending, but IINA believes the damages suffered by EMI may exceed the $500,000.00 claim made by Jeffreys.

### Empress II Contract

The second contract ("Empress II contract") is between EG & G Washington Analytical Services ("EG & G") and the United States Navy. The debtor, EMI, became involved with the Empress II contract as a subcontractor who was to construct the Empress II steel barge ("vessel"). IINA is not a surety on this contract nor is it connected with it in any other capacity.

On January 16, 1987, EG & G terminated EMI's right to proceed under the subcontract contending EMI defaulted for various reasons. On January 21, 1987, EMI filed a voluntary Chapter 11 petition in this Court. Subsequently, after obtaining relief from the automatic stay of 11 U.S.C. § 362, EG & G filed suit in the United States District Court seeking a declaration that title to the vessel was in the United States Navy and that EG & G was entitled to possession pursuant to the Empress II contract. EMI counterclaimed for an equitable adjustment to its subcontract alleging wrongful default termination. In addition, two intervenors, L.F. Gaubert & Co., Inc., and International Marine, Inc. ("IMI"), claimed interests in the vessel.

On April 24, 1989, a final judgement was rendered by the United States District Court granting the relief requested by EG & G. However, EMI's counterclaim was not dismissed and is still pending. In an effort to resolve this dispute, a settlement agreement was submitted to this court.

IINA, as EMI's surety on the lighter vessel contract, is the only party which has objected to the settlement agreement which would dispose of the Empress II contract litigation. The agreement calls for EG & G to pay a total of $130,000.00 to certain

---

1. The movants in their Joint Stipulation requesting "discharge" apparently meant "dismissal" under 11 U.S.C. § 1112 since the only "discharge" in a Chapter 11 case is through a confirmed plan. See 11 U.S.C. § 1141. No such plan has been submitted by the debtor-in-possession. Furthermore, this court denies the debtor's discharge, pending further proceedings, since this court does not totally approve the settlement agreement.

entities in exchange for full satisfaction of any and all claims EMI may have with respect to the Empress II vessel against the United States Navy and/or EG & G. The entities and amounts to be paid are as follows:

1.) $40,000.00 to IMI as a secured creditor;

2.) $55,000.00 to Bay Bank & Trust Company as subordinated secured creditor;

3.) $25,000.00 to Spriggs & Hollingsworth, special counsel for EMI, for attorney's fees;

4.) $7,000.00 to William M. Atkinson, counsel for EMI, for attorney's fees;

5.) $3,000.00 to Lawrence B. Voit, counsel for the creditor's committee, for attorney's fees.

The agreement also would have this court order that the $20,000.00 retainage on the lighter vessel contract presently held by the United States Navy be paid over to Bay Bank if and when such retainage is paid to EMI. Bay Bank is EMI's largest secured creditor with a properly perfected security interest in virtually all of EMI's assets.

IINA's first contention is it has an ownership interest in all of EMI's assets, including EMI's counterclaim against EE & G, pursuant to the agreement of indemnity executed by EMI in 1985. This theory is rooted in the concept of conventional subrogation. IINA's second contention is it has an equitable interest in EMI's assets by operation of equitable subrogation.

"Subrogation is the substitution of one person in the place of another with reference to a lawful claim or right." *Boley v. Daniel*, 72 Fla. 121, 123, 72 So. 644, 645 (1916). Florida has long recognized two types of subrogation. *Dixie Nat'l Bank v. Employers Commercial Union Ins. Co. of America*, 463 So.2d 1147, 1151 (Fla.1985).

 The concept of equitable subrogation is "a legal fiction which arises by operation of law where one having a liability, a right, or a fiduciary relationship pays a debt owed by another under circumstances in which he is in equity entitled to the security or obligation held by the creditor

whom he has paid." *Matter of Munzenrieder Corp.*, 58 B.R. 228 (Bankr.M.D.Fla. 1986); *See also, Dixie*, 463 So.2d at 1151; *Boley*, 72 Fla. at 123, 72 So. at 645. Even though the right to remedies is not enforceable until the surety has discharged their principal's obligation, the equitable right or lien relates back to the making of the suretyship. *In re Ward Land Clearing & Drainage, Inc.*, 73 B.R. 313, 315 (Bankr.N. D.Fla.1987); *Phifer State Bank v. Detroit Fidelity & Surety Co.*, 97 Fla. 538, 543–44, 121 So. 571, 573 (1929). Moreover, an equitable subrogation claim or right is not a security interest under the Uniform Commercial Code. Thus, compliance with the requirements of Article 9 is unnecessary to preserve a dominant right. *Ward*, 73 B.R. at 316; *See also, McAtee v. United States Fidelity and Guaranty Co.*, 401 F.Supp. 11, 14–15 (N.D.Fla.1975); *Transamerica Ins. Co., v. Barnett Bank of Marion County*, 540 So.2d 113, 116–17 (Fla.1989). Finally, a surety's equitable subrogation rights are not limited to those obtained by standing in the shoes of the defaulting contractor, but the rights extend to those obtained by stepping in the shoes of laborers and materialmen who have been paid by the surety and into the shoes of the obligee itself. *Ward*, 73 B.R. at 316 (citing *National Shawmut Bank of Boston v. New Amsterdam Casualty Co.*, 411 F.2d 843, 845 (1st Cir.1969)); *See also, Transamerica*, 540 So.2d at 116 ("rights of the surety as subrogee are not inferior even to the rights of the obligee and may be asserted against the obligee.").

 On the other hand, conventional subrogation is a right flowing from contract. It occurs where "one having no interest in or relation to the matter pays the debt of another, and by agreement is entitled to the securities and rights of the creditor so paid." *Boley*, 72 Fla. at 121, 72 So. at 644. Like equitable subrogation, a right arising under conventional subrogation will be enforced only after a balancing of the equities. *Dixie*, 463 So.2d at 1152. However, unlike equitable subrogation a conventional subrogation right is a security interest under the Uniform Commercial

Code and must be perfected to gain priority over other creditors. *Transamerica*, 540 So.2d at 117.

■ Applying these principles to the facts of this case, it is clear that IINA may not rely on conventional subrogation for priority over other creditors since it did not perfect its security interest under the Uniform Commercial Code. However, it is also clear that IINA has a superior right to any outstanding funds under the **lighter vessel contract** for payments discharging its principal's (EMI) obligation under the principle of equitable subrogation. However, IINA contends they have an equitable right to all of EMI's assets, including any settlement of the **Empress II contract** litigation.

This contention is clearly erroneous. Although the surety in the *Ward* case was seeking funds only from the contract it bonded, this court stated, "The surety on the facts before us was bound by the terms of the Master Surety Agreement to the payment of all claims arising out of the performance of contracts **in connection with which bonds were executed.**" 73 B.R. at 315 (emphasis added). Furthermore, the Supreme Court of Florida recently held, "Priority based on equitable subrogation in one contract does not provide priority in excess funds from another contract." *Transamerica*, 540 So.2d at 117. In so holding, the Supreme Court of Florida expressly approved the dissent below which stated:

> [T]o the extent Transamerica is claiming proceeds on construction contracts not covered by its bond based on the "dragnet" collateral provisions in its indemnity agreement with Turner, or earned but unpaid construction funds held by the owner which exceed the surety's loss on a particular job, it appears Transamerica has left the safe haven of equitable subrogation for the posture of a contract assignee, or "conventional subrogation," and must jump the hurdles of having to perfect such a security interest under the [Uniform Commercial] Code.

*Transamerica Insurance Co. v. Barnett Bank*, 524 So.2d 439, 450 (Fla. 5th DCA 1988) (dissenting opinion). This is the precise situation in this case; IINA is also leaving the "safe haven" of equitable subrogation when it claims to have an equitable interest in anything other than the lighter vessel contract. For IINA to have a greater interest in EMI's other assets than that of a general creditor, it had to "jump the hurdles" of having to perfect its security interest. This it did not do.

Clearly, in relation to the Empress II contract, IINA is a general creditor of EMI. Furthermore, all entities to receive funds as listed in the settlement agreement are either secured parties or have priority claims which would come before IINA's claim. Finally, the $130,000.00 would not have come into the bankruptcy estate but for the settlement agreement. Therefore, IINA's objections to the settlement agreement and payment of settlement amounts in respect to the Empress II contract are denied.

■ IINA's third contention is it would be improper to pay over the $20,000.00 in retainage on the lighter vessel contract to Bay Bank since IINA has first right to the retainage through equitable subrogation. We agree. As stated previously, IINA has a superior claim to funds held by the United States Navy under the lighter vessel contract. However, the right to the remedies of equitable subrogation will generally not be enforced until actual discharge of the whole obligation or a final judgement. *Whyel v. Smith*, 101 Fla. 971, 975, 134 So. 552, 554 (1931); *Phifer*, 97 Fla. at 543–44, 121 So. at 573; *Ulery v. Asphalt Paving, Inc.*, 119 So.2d 432, 437 (Fla. 1st DCA 1960) ("the right of subrogation does not exist until the entire obligation is discharged by the surety or guarantor."); *Cleary Bros. Constr. Co. v. Upper Keys Marine Constr., Inc.*, 526 So.2d 116, 117 (Fla. 3rd DCA 1988) ("No rights of subrogation arise from a partial satisfaction of an obligation.").

■ Because the litigation between IINA and Jeffreys is still pending, any claim by IINA is contingent on the outcome of that case. Furthermore, IINA readily admits that EMI's counterclaim may be

worth more than Jeffreys claim. If this turns out to be true, IINA may not have a claim to all of the remaining funds.

Therefore, this court approves the settlement agreement with the exception that all remaining funds under the lighter vessel contract shall be held by the United States Navy until the pending litigation between IINA and Jeffreys is settled. Thereafter, a final determination, in the appropriate forum, will be made as to which entities are entitled to said funds consistent with this opinion. Dismissal of this case will be held in abeyance pending a determination as to whether or not further proceedings are necessary as a result of this opinion.

DONE AND ORDERED.