CAPITOL INDEMNITY CORPORATION, Appellant,

v.

Thomas S. HEIDKAMP, Trustee in Bankruptcy for Steve A. Clapper & Associates of Florida subdivision of the State of Florida, Appellee.

Bankruptcy No. 99–13102–9P7.
Civ. No. 2:01–CV–427 FTM 29 DNF.
Adversary No. 00–00438.

United States District Court,
M.D. Florida,
Fort Myers Division.

May 5, 2003.

Michael P. Brundage, Marie A. Borland, Gregory P. Brown, Hill, Ward & Henderson, P.A., Tampa, FL, for Appellant.

Michael R. Whitt, Becker & Poliakoff, PA, Ft. Myers, FL, for Appellee.

## MEMORANDUM ON BANKRUPTCY APPEAL

WISEMAN, Senior District Judge.

Before the Court is a Bankruptcy Appeal filed by Capitol Indemnity Corpora-

tion ("Appellant" or "Capitol") against Thomas S. Heidkamp, Trustee in Bankruptcy for Steve A. Clapper & Associates ("Debtor" or "Appellee"). In the Order on Motion for Rehearing or Reconsideration dated June 19, 2001, the Bankruptcy Court for the Middle District of Florida reversed its previous order denying summary judgment on Counts I and II, and granted the Debtor's Motion for Summary Judgment. For the reasons discussed below, the decision of the bankruptcy court is RE-VERSED. This Court DENIES the Debtor's Motion for Summary Judgment and GRANTS the Appellant's motion for summary judgment.

## I.  Introduction

This case involves competing claims between the Chapter Seven Trustee and the surety which guaranteed the Debtor contractor's payment and performance on two construction projects. Both parties stipulate to these basic facts. The Debtor was a contractor engaged in the business of underground utility construction, primarily for public construction projects. Capitol is a bonding company and was the surety on payment and performance bonds on several construction projects of the Debtor in Florida.[1] Two separate transactions are at issue in this appeal, a contract with Manatee County, Florida, ("Manatee Contract") and a contract with Charlotte County, Florida, ("Charlotte Contract"). Capitol was the surety for the Debtor on both contracts.

The details of the Manatee Contract are as follows. On January 5, 1999, the Debtor entered into a contract with Manatee County for a water main rehabilitation project. On August 11, 1999, Debtor filed its voluntary petition for relief under Chapter Eleven of the Bankruptcy Code, and on August 17, 1999, the bankruptcy court ordered that the Debtor could continue its business. Operating under this order, on September 30, 1999, the Debtor submitted a payment application to Manatee County seeking a progress payment in the amount to $95,702.04, for work and materials on the project up to that point. On October 21, 1999, Manatee County declared a default by the Debtor and terminated the Debtor's right to complete the project. On November 17, 1999, the bankruptcy court converted the case into a Chapter Seven liquidation case. As the surety, Capitol began making payments dated December 2, 1999;[2] January 4, 2000; January 12, 2000; and March 1, 2000. On March 31, 2000, Manatee County paid the Debtor $94,702.04, per the September request. Capitol subsequently continued paying the Debtor's creditors. The Parties stipulate that Capitol paid various contractors a total of $595,799.59 on its payment and performance bond obli-

---

**1.** On August 25, 1998, as part of their ongoing business negotiations, the Debtor executed the General Indemnity Agreement ("GIA"). Section Eleven reads in relevant part:

*Right of the surety to have principal treated as a trustee and contract funds treated as trust funds*

It is understood, agreed and hereby expressly declared that all monies due or to become due under the contract or contracts covered by such bond or bonds are trust funds, whether in the possession of the Principal or otherwise, for the benefit of and for payment of all obligations for labor

and material furnished in connection with such contract or contracts for which the Surety would be liable under said bond or bonds; and which said trust also inures to the benefit of the Surety for any liability and loss it may have or sustain under said bond or bonds; and this agreement and declaration shall also constitute notice of such trust.

**2.** For example, on December 2, 1999, Capitol paid $224,194.32 to Hughes Supply, Inc., one of Clapper's largest material suppliers on the Manatee County Project.

gations on the Manatee Contract. There is an additional $328,368.58 outstanding, representing unearned contract proceeds and retainage under the Manatee Contract.

The Charlotte Contract followed a parallel course. On January 25, 1999, the Debtor entered into the Charlotte Contract relating to the Harbor Boulevard Project. On August 11, 1999, Debtor filed for Chapter Eleven bankruptcy protection. On September 24, 1999, Debtor sent a payment request to Charlotte County for work done between July 17 and September 3. On October 8, 1999, Charlotte County declared a default of the contract and terminated its contract with the debtor.[3] On November 17, Debtor converted to Chapter Seven bankruptcy proceedings. Capitol paid out Debtor's creditors during the month of December. On January 24, 2000, Charlotte county paid the trustee $80,324.00 pursuant to the payment request of September 24, 1999. Capitol continued to pay the Debtor's creditors during March 2000. The Parties stipulate that Capitol paid various contractors a total of $137,459.08 on its payment and performance bond obligations on the Charlotte Contract, resulting in a total of $733,258.67 on both contracts.

Capitol filed this complaint on July 17, 2000, alleging that the Trustee should turn over the $95,702.04 paid by Manatee County and the $80,324.00 paid by Charlotte County to Capitol because they are not part of the estate. Capitol argues that because it has satisfied a total $733,251.67 in payment and performance bond claims on the Charlotte and Manatee projects, and because this amount far exceeds the claims disputed here, then Capitol has a right to the funds. Capitol argues that when it discharged payment and performance obligations, it acquired equitable subrogation rights, which relate back to the execution of the GIA.

The Debtor responds with a different characterization of the funds. Debtor argues that the disputed funds are progress payments earned by the Debtor while the Debtor was still in a Chapter Eleven case. Therefore, the funds are property of the estate under 11 U.S.C. § 541, which includes all legal and equitable interests of the debtor in property as of the commencement of the case. Debtor emphasizes that at the time the payment requests were submitted, neither contract was in default, and neither was terminated until after the payment was requested. Thus, the payments have been earned and are property of the estate subject to turnover pursuant to 11 U.S.C. § 542.

## II. Standard of Review

■ Under Bankruptcy Rule 8013, this Court will not set aside a bankruptcy court's findings of fact unless the Court finds them to be "clearly erroneous." *See In re Downtown Properties, Ltd.*, 794 F.2d

---

**3.** A dispute as to exactly when the default on the Charlotte Contract occurred has arisen during this appeal. Paragraph 21 of the joint stipulation of facts reads as follows: "Charlotte County declared a default and terminated its contract with Debtor on October 8, 1999. An authentic copy of the default and termination notice from Charlotte county is attached as Exhibit H." The letter reads: "The contract completion date for this project was June 27, 1999. You are now 103 days beyond the contract and the date. Accordingly, the rights of Steve A. Clapper & Associates to proceed with completing the work are now terminated." The Debtor interprets this language to mean that the actual default occurred prior to the date of the letter, arguing: "In mid–1999, the Debtor began to default on its contract obligations." (Debtor's Brief at 2.) The Debtor holds that the default occurred on October 8, 1999, when Charlotte County sent the letter terminating the contract, which noted that the Debtor was 103 days late, but declared the default on October 8, 1999.

647, 651 (11th Cir.1986). A finding of fact is clearly erroneous when "the reviewing court is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). The Court reviews the bankruptcy judge's conclusions of law are reviewed de novo which requires the district court to independently examine the law and draw its own conclusions after applying the law to the facts without regard to the decision of the bankruptcy court. *Reliance Ins. Co. v. Enstar Group, Inc.*, 192 B.R. 579 (M.D.Ala.1996)(citing *In re Chase & Sanborn Corp.*, 904 F.2d 588, 593 (11th Cir.1990)).

## III. Decision of the Bankruptcy Court

The bankruptcy court held as follows: "the funds paid to the Trustee on both the Manatee and the Charlotte County projects before these contracts were declared to be in default were fully earned by the Debtor, and the Trustee is entitled to retain the funds in dispute." (Bankr.Ct. Op. at 16.)[4]

## IV. Analysis

### A. Appellant's Argument

■ Capitol argues that because it made payments on the performance bonds before each county made payments to the Trustee, the doctrine of equitable subrogation applies regardless of when the work was completed or requested. Capitol argues that its equitable subrogation rights to the contract funds relate back to the commencement of the parties' relationship, not the exact time of default or funds request. *In re Cone Constructors, Inc.*,

265 B.R. 302, 309 (Bankr.M.D.Fla.2001)(citing *In re Massart Co.*, 105 B.R. 610, 611 (W.D.Wash.1989)). Capitol's position is summarized by the *Cone* Court in the following holding:

[A] surety is entitled to a right of equitable subrogation with respect to any contract funds owed by the owner of a project, where a debtor/contractor has defaulted on a public construction project, and the surety has performed its obligations under a bond. Further, where the debtor/contractor files a chapter 7 bankruptcy petition following its default, the surety's right of equitable subrogation is superior to any interest that the chapter 7 trustee may claim in the contract funds, to the extent of the surety's performance under the bond.

*Id.* at 310. Capitol and the *Cone* court rely on two prior cases to establish these rights, *Pearlman v. Reliance Ins. Co.* 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962) and *Transamerica Ins. Co. v. Barnett Bank of Marion County, N.A.*, 540 So.2d 113 (Fla.1989).

### B. Debtor's Argument (Adopted by the Bankruptcy Court)

Debtor argues that the characterization of the disputed funds hinges on when they were requested, not when they were received. The Debtor and the bankruptcy court rely on *In re Glover Construction Co., Inc.* as the controlling applicable precedent. 30 B.R. 873 (Bankr.W.D.Ky.1983). Within the Chapter Eleven context, the *Glover* court distinguishes progress payments from retainage funds and other types of payments. *Id.* Their broad reasoning is that Chapter Eleven debtors

---

4. This statement by the bankruptcy court is not wholly accurate, even under the Debtor's characterization of the transaction. Although the funds were "earned" and the payment requests submitted before each county declared Debtor's default, the funds were not paid until after (1) each county had declared Debtor's default, and (2) the surety had begun making payments to the Debtor's creditors.

must continue to receive payments for work completed in good faith in order to attempt completion of the project. According to the Debtor and the Bankruptcy Court, because the payment requests were for work completed prior to default, and the requests were made during the Chapter Eleven process, then the Trustee should retain the progress payment on behalf of the bankrupt estate. Under this analysis, the time of their actual payment is irrelevant.

Pursuant to 11 U.S.C. § 541, the property of a bankruptcy estate includes "all legal or equitable interests of the debtor-in-property as of the commencement of the case." *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). The Debtor argues that progress payments are "latent assets" of the bankrupt estate. *In re Glover*, 30 B.R. at 879. As explained by the court in *In re Glover*:

> Whether we view the contractor's interest as a legally binding contract interest or as an interest held by him as a trustee, the property will become part of the estate... Acknowledging interests in others, while warranted, does not alter our basic § 541 determination.

*Id.* at 882.

In finding for the Debtor, the bankruptcy court focused on the fact that at the time the Debtor submitted requests for payment, neither contract was in default. Thus, the court concluded, the payments requested had been earned and became properties of the estate, subject to turn over, on the date requested. For this proposition, the Debtor cites to the *Glover* court's upholding a progress payment to a financially-troubled contractor, absent showing of bad faith or abuse of discretion. *Id.* "Progress payments are those funds which the owner contracts to pay periodically based upon satisfactory perform-

ance." *Id.* at 875. They are part of an industry system to keep the contractors working and owners paying. *See Fireman's Fund Insurance Co. v. United States*, 362 F.Supp. 842, 846 (D.Kan.1973) ("It is common knowledge that contractors rely on contract proceeds administered through progress payments to properly finance the contract.") The bankruptcy court argues that because the Debtor was still attempting to keep his business going when the progress payments were earned and requested, the fact that they were paid once he had entered default is not relevant.

## C. Analysis

■ This Court finds the Florida Supreme Court's decision in the *Transamerica* case controlling and thus reverses the bankruptcy court's decision. *Transamerica Ins. Co. v. Barnett Bank of Marion County, N.A.* 540 So.2d 113. Both the *Transamerica* case and the present case deal with earned but unpaid sums, where the surety has already satisfied its payment and performance obligations. In *Transamerica*, the Florida Supreme Court overruled the district court and found that a surety's equitable subrogation rights are superior to a bank's prior perfected security interest in the contract funds. *Id.* at 116–117. This holding is supported by the *Pearlman* doctrine, which is summarized as follows:

> We therefore hold in accord with the established legal principles stated above that the Government had a right to use the retained funds to pay laborers and materialmen; that the laborers and materialmen had a right to be paid out of the fund; that the contractor, had he completed his job and paid his laborers and materialmen, would have become entitled to the fund; and that the surety, having paid the laborers and material-

men, is entitled to the benefits of all these rights to the extent necessary to reimburse it. Consequently, since the surety in this case has paid out more than the amount of the existing fund, it has a right to all of it.

*Pearlman,* 371 U.S. at 141–142, 83 S.Ct. 232. Also directly on point is the Middle District of Florida's restatement of the *Pearlman* doctrine as follows:

[T]he Court finds that a surety is entitled to a right of equitable subrogation with respect to any contract funds owed by the owner of the project, where a debtor/contractor has defaulted on a public construction project, and the surety has performed its obligations under a bond.

*In re Cone Constructors, Inc.,* 265 B.R. 302, 310 (Bankr.M.D.Fla.2001)(emphasis added); *see In re Caddie Construction Co., Inc.,* 125 B.R. 674 (Bankr.M.D.Fla.1991)(relying on *Transamerica* and *Pearlman* to grant a surety the unpaid contract balance on government contracts over the competing interest of the Chapter Seven trustee).

Thus, the Debtor's extensive discussion of *Glover* and the distinction between contract and retainage funds is misguided. The relevant issues are (1)whether the Debtor was in Chapter Eleven or Chapter Seven when the payments were actually made, and (2) whether the surety had already made payments on the payment and performance bonds. Because the facts in this case differ from *Glover* on both points, the *Glover* court's distinction between progress payments and retainage fees is neither relevant nor controlling. The fact that the money at issue in the current case was labeled a progress payment when first requested by the Debtor is not dispositive. The *Glover* court's distinction between progress payments and retainage fees is relevant only insofar as it relates to the court's distinction between Chapter Eleven and Chapter Seven cases. As the *Glover* court emphasized, when a debtor is still performing its contract under Chapter Eleven, and the debtor's ability to do so is contingent upon receiving progress payments, then the court may balance this need with the protection of the surety. *Glover* at 882. In the present case, however, the Debtor converted to Chapter Seven and both counties declared the Debtor in default on the contract before the payments were made. Furthermore, the surety began making payments on the payment and performance bonds. Therefore, the payments in question should be evaluated in the context of a Chapter Seven liquidation case not a Chapter Eleven reorganization case. Not only is *Glover* not controlling, but the rationale of protecting the debtor's ongoing ability to operate his business does not apply.

■ A surety's right to equitable subrogation after satisfying the defaulting contractor's obligations relates back to the beginning of the parties' relationship. Thus, the Court must look to the time the payments were owed or actually paid. Based on this analysis, Capitol is entitled to the payments made to the Trustee by Charlotte and Manatee County after the Debtor had converted to Chapter Seven bankruptcy and defaulted on each contract and after the surety had paid out on the performance bonds. Therefore, this Court REVERSES the decision of the bankruptcy court.

## V. Conclusion

For the reasons discussed herein, the decision of the bankruptcy court is REVERSED. Capitol Indemnity Corporation's Motion for Partial Summary Judgment is GRANTED and the Trustee's Motion for Partial Summary Judgment is DENIED.

## ORDER

Before the Court is a Bankruptcy Appeal filed by Capitol Indemnity Corporation ("Appellant" or "Capitol") against Thomas S. Heidkamp, Trustee in Bankruptcy for Steve A. Clapper & Associates ("Debtor" or "Appellee"). In the Order on Motion for Rehearing or Reconsideration dated June 19, 2001, the Bankruptcy Court for the Middle District of Florida reversed its previous order denying summary judgment on Counts I and II, and granted the Debtor's Motion for Summary Judgment. For the reasons more fully contained in the accompanying Memorandum, the decision of the bankruptcy court is REVERSED. The Court DENIES the Debtor's Motion for Summary Judgment and GRANTS the Appellant's motion for summary judgment.

It is so **ORDERED.**